**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

IN RE:

*EX PARTE* APPLICATION UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM THE KSL CAPITAL PARTNERS

Case No. ____________

# *EX PARTE* APPLICATION FOR ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iv

PRELIMINARY STATEMENT ........ 1

JURISDICTION AND VENUE ........ 3

FACTUAL BACKGROUND ........ 3

I. MR. FERRER'S REAL ESTATE INVESTMENT ........ 3

II. MISREPRESENTATIONS BY MR. SHIVDASANI AND BLUEBAY ........ 4

III. BREACH OF CONTRACT BY MR. SHIVDASANI AND BLUEBAY ........ 6

IV. INVESTMENT BY KSL CAPITAL PARTNERS ........ 8

V. THE FOREIGN PROCEEDINGS ........ 9

VI. THE REQUESTED DISCOVERY ........ 10

ARGUMENT ........ 11

I. THE SECTION 1782 APPLICATION MEETS EACH OF THE STATUTORY REQUIREMENTS FOR DISCOVERY ........ 11

A. The Discovery Subject Resides or is Found in the District of Colorado ........ 11

B. The Requested Discovery is "For Use" in the Foreign Proceedings ........ 12

C. The Applicants are Interested Persons ........ 17

II. THE COURT SHOULD GRANT THE 1782 APPLICATION UNDER THE DISCRETIONARY FACTORS IN INTEL ........ 18

A. The Discovery Subject is not a Participant in the Foreign Proceedings ........ 18

B. The Foreign Tribunals in the Underlying Proceedings are Receptive to Receiving the Requested Discovery ........ 19

C. This Application does not Circumvent any Proof-Gathering Restrictions ........ 21

D. The Requests are Narrowly Tailored and Targeted ........ 22

III. THE COURT SHOULD GRANT THE APPLICATION *EX PARTE* ........ 23

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

*Chevron Corp. v. Snaider*,
78 F. Supp. 3d 1327, 1331 (D. Colo. 2015) ........ 24

*Esses v. Hanania*,
101 F.3d 873, 874 (2d Cir. 1996) ........ 23

*Euromepa, S.A. v. R. Esmerian, Inc. (Euromepa II)*,
154 F.3d 24, 27 (2d Cir. 1998) ........ 12, 19, 20

*Gushlak v. Gushlak*,
486 Fed. App'x 215, 217 (2d Cir. 2002) ........ 23

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121, 132 (2d Cir. 2017) ........ 12, 20

*In re Accent Delight International Ltd.*,
2018 WL 2849724 (S.D.N.Y. 2018) ........ 20

*In re Apostolos Mangouras to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. 1782*, No. 17-mc-172, 2017 WL 4990655 ........ 21

*In re Application of Inversiones y Gasolinera Petroleos Venezuela*,
2011 WL 181311, at *13 (S.D. Fla. 2011) ........ 23

*In re Application of Michael Wilson & Partners, Ltd.*,
2007 WL 2221438 (D. Colo. 2007) ........ 15, 18, 20, 22

*In re Babcock Borsig AG*,
583 F. Supp. 2d 233, 238-40 (D. Mass. 2008) ........ 16

*In re Broadsheet LLC*, 2011 WL 4949864,
(D. Colo. 2011) ........ 16

*In re del Valle Ruiz*,
939 F.3d at 530 n.12 ........ 23

*In re Ex Parte Application of Jommi*,
2013 WL 6058201 (N.D. Cal. 2013) ........ 20

*In re Fagan*,
2019 WL 5819972 at *1 (D. Colo. 2019) ........ 17

*In re Gianasso*,
2012 WL 651647 (N.D. Cal. 2012) .......... 20

*In re Hallmark Capital Corp.*,
534 F. Supp. 2d 951, 956-57 (D. Minn. 2007).......... 17

*In re Ishihara Chem. Co.*,
121 F. Supp. 2d 209, 210 n.1 (E.D.N.Y. 2000), *vacated as moot*, 251 F.3d 120 (2d Cir. 2001) .......... 23

*In re Letter of Request from Supreme Court of Hong Kong*,
138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) .......... 23

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
539 F.2d 1216, 1219 (9th Cir. 1976) .......... 23

*In re Mesa Power Group, LLC*,
WL 6060941, at *9-10 (D.N.J. 2012) .......... 24

*In re Optimal Investment Services, S.A.*,
773 F.3d 456 (2d Cir. 2014).......... 20

*In re Perez Pallares*, 10–cv–02528–PAB,
2010 WL 4193072 .......... 11, 19, 24

*In re Pinckuk*,
2014 WL 348110 at *2 (D. Wyo. 2014) .......... 17

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241, 264-65 (2004) .......... 2, 12, 15, 16, 18, 19, 20, 21

*Interbrew Central Europen Holding BV v. Molson Coors Brewing Company*,
2013 WL 5567504 (D. Colo. 2013) .......... 21

*Mees v. Buiter*,
793 F.3d 291, 302 (2d Circuit 2015).......... 22

*Republic of Ecuador v. Bjorkman*,
801 F. Supp. 2d 1121, 1123 (D. Colo. 2011).......... 12, 16, 17,19, 20

*Westjest Airlines v. Lipsman*,
2015 WL 7253042 .......... 12, 24

**PRELIMINARY STATEMENT**

Applicants Ecoprivate Business Ltd. and Mr. Jean Sebastian Ferrer Funke ("Ecoprivate," "Mr. Ferrer" or "Applicants") respectfully submit this memorandum of law in support of their *ex parte* application for judicial assistance pursuant to 28 U.S.C. § 1782 (the "Section 1782 Application" or the "Application"), directing KSL Capital Partners (the "Discovery Subject") to produce documents for use in (1) a contemplated criminal proceeding in Switzerland (the "Contemplated Criminal Proceeding"), which Applicants anticipate will be brought against Mr. Sonashah Shivdasani ("Mr. Shivdasani"); and (2) an arbitration proceeding (the "Arbitration Proceeding") commenced by Ecoprivate against Bluebay Resorts (BVI) Limited ("Bluebay") (both proceedings collectively referred to as the "Foreign Proceedings").

This Application stems from a dispute between Ecoprivate and Mr. Ferrer on the one hand and Bluebay and Mr. Shivdasani on the other. Ecoprivate is a company owned and controlled by Mr. Ferrer and Bluebay is a company ultimately owned and controlled by Mr. Shivdasani. Mr. Shivdasani used Bluebay as a vehicle to fraudulently induce the Applicants to purchase a Thailand villa (the "Villa") and the surrounding land (the "Land") (together, the "Project") at the luxury Soneva Kiri Resort,[1] owned by Mr. Shivdasani, for the total price of US $6.175 million but failed to deliver the property to Applicants (the "SKR Scheme"). Mr. Shivdasani knew at the time he was inducing Applicants to make payment for the Villa that he would not be in a position to deliver on his promises, but misled Applicants anyway to proceed with the transaction. Mr. Ferrer is one of several victims of the SKR Scheme.

[1] Soneva Kiri Resort Co., Ltd. ("Soneva Kiri Resort"), which was later renamed as Tropical Island Ltd., owned and operated the Soneva Kiri Resort and Six Senses Spa, adjacent to the Villa. *See* De Luca Decl. at ¶¶ 6, 26, 27, 31 and Exs. A, N, O, S. Mr. Shivdasani uses Soneva and Six Senses as brand names, and there may be derivative corporate entities that hold these names, beyond those listed in this Application. *See* De Luca Decl. at ¶¶ 6, 26, 27, 31 and Exs. A, N, O, S .

The Soneva Kiri Resort is one of several luxury resort developments ultimately owned and operated by Mr. Shivdasani and his companies which trade under the brand known as Soneva (collectively, "Soneva"). Soneva was founded by Mr. Shivdasani and his wife Eva Malmström and is an amalgam of the names Sonu and Eva Bluebay. Mr. Shivdasani breached their contractual agreement by failing to convey good title to the Villa and the surrounding Land to the Applicants (and other purchasers similar to Mr. Ferrer) and by collecting rental monies on behalf of Applicants and then keeping the rental monies.. Mr. Shivdasani has paid less than ten percent of the rent owed to Ecoprivate and audaciously lists Mr. Ferrer's very same Villa online for US $10,930 per night up until this day.

In November 2019, KSL Capital Partners and another investor invested approximately US $230 million in Soneva. In aid of the Foreign Proceedings, Applicants seek to obtain evidence from KSL Capital Partners that may shed light on the extent that Mr. Shivdasani misrepresented his financial position to Mr. Ferrer, Ecoprivate, and other victims, that he breached the agreements he entered into with Ecoprivate, and that he has been operating the Soneva Kiri Resort in breach of the obligations to purchasers such as Ecoprivate under the terms on which they were led to believe they were purchasing their interests in the resort.

The Applicants are entitled to the relief they seek, as they satisfy the statutory requirements of 28 U.S.C. § 1782. Namely, (1) the Applicants seek discovery from the Discovery Subject, which is found in this district; (2) the materials that Applicants seek are "for use" in the Foreign Proceedings; and (3) the Applicants are "interested persons" in the Foreign Proceedings. Additionally, as explained below, the discretionary factors that this Court should consider in determining whether to grant an application under *Intel Corp. v. Advanced Micro Devices, Inc.* 542 U.S. 241, 264-65 (2004) also favor granting the Section 1782 Application.

## JURISDICTION AND VENUE

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1782(a). Venue in this District is proper under 28 U.S.C. § 1391 because the intended subpoena recipient is found in this District. KSL Capital Partners' headquarters are located in Denver, Colorado. *See* Declaration of E. Martin De Luca in Support of *Ex Parte* Application Under 28 U.S.C. § 1782 to Take Discovery From KSL Capital Partners ("De Luca decl.") at ¶ 17 and Ex. D.

## FACTUAL BACKGROUND

### I. MR. FERRER'S REAL ESTATE INVESTMENT

In or about March 2008, Mr. Ferrer entered into negotiations with Mr. Shivdasani to purchase the four-bedroom residential Villa within the proposed Soneva Kiri Resort, located in Thailand, and a plot of Land on which the Villa was to be constructed. *See* De Luca Decl. at ¶¶ 6, 26 and Exs. A, N. Due to restrictions under the laws of Thailand, the purchase had to be structured as a sale and purchase of the Villa, and a 30-year lease of the Land. *See* De Luca Decl. at ¶¶ 6, 27, 30 and Exs. A, O, S. Mr. Shivdasani promised to Mr. Ferrer that he would obtain good, and marketable title from the lessor to the Land, as otherwise the investment would be worthless. *See* De Luca Decl. at ¶¶ 6, 19, 29 and Exs. A, F, G, Q. On March 27, 2008, Mr. Ferrer agreed to purchase the Villa and take a lease of the Land from Mr. Shivdasani, acting on behalf of Bluebay, and under that agreement Mr. Shivdasani promised to register the title by March 1, 2010. *See* De Luca Decl. at ¶¶ 6, 26 and Exs. A, N. Under his agreement with Mr. Shivdasani, Mr. Ferrer agreed to a deposit of 5% of the purchase price of US $6 million, and on April 14, 2008 Mr. Ferrer paid the US $300,000 deposit. *See* De Luca Decl. at ¶¶ 6, 26 and Exs. A, N. Thereafter, Mr. Shivdasani, via his various companies, entered into the relevant agreements directly with Ecoprivate. *See* De Luca Decl. at ¶ 6 and Ex. A, O-Z.

By March 1, 2010, Mr. Shivdasani had not delivered on his promise to register the lease. *See* De Luca Decl. at ¶¶ 6, 26 and Exs. A, N. However, in March 2010, he negotiated with Mr. Ferrer and induced Ecoprivate to enter into subsequent agreements on March 29, 2010 to extend the deadline to register the title to December 31, 2010 and to pay for a fifth bedroom to be constructed in the Villa for an additional price of US $175,000, bringing the total purchase price for the Villa to US $6.175 million. *See* De Luca Decl. at ¶¶ 6, 30, 32 and Exs. A, R, T. In October 2010, Ecoprivate entered into an agreement with Soneva Kiri Resort, whereby Soneva Kiri Resort agreed to manage the rental of the Villa on behalf of Ecoprivate and pay rent to Ecoprivate. *See* De Luca Decl. at ¶¶ 6, 37 and Exs. A, Y. The contracts described above, entered into from 2008 to 2010, were partially negotiated and executed in Switzerland. *See* Klein Decl. at ¶ 14.

In the series of agreements entered into with Mr. Ferrer and Ecoprivate, Mr. Shivdasani acted individually as well as through a complex web of associated individuals and corporate entities in offshore jurisdictions such as Thailand and the British Virgin Islands.[2] This is another reason why Applicants have requested discovery from KSL Capital Partners relating to Mr. Shivdasani as well as to associated companies and individuals. *See* De Luca Decl. at ¶ 15 and Ex. B.

## II. MISREPRESENTATIONS BY MR. SHIVDASANI AND BLUEBAY

[2] Each of Bluebay, SKR Villas (Thailand) Co. Ltd. ("SKR Villas"), Soneva Kiri Resort, and Mr. Shivdasani signed relevant agreements. *See* De Luca Decl. at ¶¶ 26-38 and Exs. O-Z. In some instances, the contract was with Bluebay but included a Soneva Kiri Resort stamp. *See* De Luca Decl. at ¶¶ 26, 29-32, 35-38 and Exs. N, Q-T, W-Z. In some cases, individuals acted on behalf of Mr. Shivdasani. For example, Narasimhan Ganesan signed served agreements as an authorized director of SKR Villas (Thailand) Limited, including the Villa Management Agreement and the Lease Agreement, among others. *See* De Luca Decl. at ¶¶ 27, 29, 31, 33, 35 and Exs. O, Q, S, U, W. Patinya Senaveenin signed as a witness the Villa Management Agreement and the Lease Agreement, among others. *See* De Luca Decl. at ¶¶ 27, 29, 31, 33, 35 and Exs. O, Q, S, U, W. Phimolwan Phromchanya signed the Agreement to Purchase and Sell the Villa and the Villa Management Agreement, among others. *See* De Luca Decl. at ¶¶ 31, 35 and Exs. S, W. Piyachat Jiemvitayanukul is Mr. Shivdasani's personal assistant in his capacity as CEO of Soneva. *See* De Luca Decl. at ¶ BB and Ex. 40.

In 2018, Mr. Shivdasani claimed that his Soneva resorts received approximately US $70 million in revenue and made US $24 million in profit, yet in a July 2020 private letter to Mr. Ferrer and Ecoprivate, Mr. Shivdasani cited financial difficulties that have prevented him over the years from delivering on his promises to Mr. Ferrer and Ecoprivate. *See* De Luca Decl. at ¶¶ 20, 39 and Exs. H, AA. In a September 2020 email, an individual known as Rajesh B L V, the Group Corporate Secretary for Soneva, claimed that, "Bluebay Resorts (BVI) Limited doesn't have sufficient resources to participate in the arbitration proceedings." *See* De Luca Decl. at ¶ 43 and Ex. EE. Despite these claims of a lack of resources, Mr. Shivdasani has stated publicly that their recent performance following the COVID-19 pandemic had been "stellar" and "in some ways…we've become a beneficiary of Covid." *See* De Luca Decl. at ¶ 25 and Ex. M. Mr. Shivdasani's Soneva resorts were recently featured in a prominent travel article, titled "*What It's Like to Holiday in the Maldives Right Now*," painting a rosy picture of the prospects for Soneva resorts. *See* De Luca Decl. at ¶ 44 and Ex. FF. In a March 9, 2021 email, Mr. Shivdasani claimed that, "Here at Soneva, the new year already looks to be a very busy and exciting time." *See* De Luca Decl. at ¶ 45 and Ex. GG. Unfortunately, even though Mr. Shivdasani has apparently been an economic beneficiary of COVID-19, the numerous investors he has defrauded over the years, continue to wait to have their funds returned, while Mr. Shivdasani tells them stories about financial difficulties. *See* Klein Decl. at ¶ 17. Mr. Shivdasani has defrauded at least nine other villa owners of approximately US $26 million, in some cases failing to construct the villas contracted for, and in others failing to pay the rental income earned. *See* Klein Decl. at ¶ 12.

When Mr. Shivdasani and Mr. Ferrer first began to do business, Mr. Shivdasani orally promised and represented to Mr. Ferrer that he, and by implication any vehicle used to purchase the Villa and lease the Land, would obtain and acquire legal ownership of the Villa, and a

registered lease and good title to the Land. *See* De Luca Decl. at ¶¶ 6, 19, 29 and Exs. A, F, G, Q. He further represented that the Project was going to be a great success and failed to disclose the financial pressures he and his companies were under. *See* De Luca Decl. at ¶ 6 and Ex. A. Relying on representations made to him by Mr. Shivdasani, Mr. Ferrer and Ecoprivate entered into a series of agreements to acquire the Villa and the related lease of the Land. *See* De Luca Decl. at ¶¶ 6, 26-38 and Exs. A, N-Z. Mr. Shivdasani knew or should have known that neither he, nor any of his corporate vehicles, would have had the means to acquire and convey good title to the Land and to fulfill his promises to the Applicants and to at least nine other victims. *See* Klein Decl. at ¶¶ 10-12. He also knew or should have known that he did not have the means to pay back Mr. Ferrer and Ecoprivate in the event he was unable to fulfill his contractual obligations. *See* De Luca Decl. at ¶ 39, 43 and Exs. AA, EE.

After entering into the agreements with Mr. Ferrer and Ecoprivate, Mr. Shivdasani transferred title to the Land to a third-party entity, SKR Residence Land Ltd., rather than to SKR Villas as he had agreed to do. *See* De Luca Decl. at ¶¶ 6, 26 and Exs. A, N. He either expressly intended to do this while representing to Mr. Ferrer that he would transfer the land to a vehicle controlled by Mr. Ferrer, in which case he lied to Mr. Ferrer; or he knew or ought to have known at that time that he would have to make such a move given the financial pressure he was under. *See* De Luca Decl. at ¶¶ 6, 26 and Exs. A, N. Accordingly, Mr. Shivdasani and Bluebay knew or ought to have known that they were misrepresenting their financial position, thereby fraudulently inducing Mr. Ferrer to part with his money while never, to the day of this filing, providing the Villa or the Land in return. *See* De Luca Decl. at ¶¶ 6, 19 and Exs. A, F, G; *see also* Klein Decl. at ¶¶ 10-12.

## III. BREACH OF CONTRACT BY MR. SHIVDASANI AND BLUEBAY

Mr. Shivdasani and Bluebay breached their contracts with Ecoprivate by failing to deliver good and marketable title to the Villa to Ecoprivate. *See* De Luca Decl. at ¶¶ 6, 19, 29 and Exs. A, F, G, Q. Neither Mr. Shivdasani nor Bluebay ever registered the lease agreement entered into with Ecoprivate with the Thai Land Office, and they have made no indication of any plans to do so. *See* De Luca Decl. at ¶¶ 6, 29 and Exs. A, Q. Additionally, over the years, Mr. Shivdasani has paid less than ten percent of the rental income Mr. Shivdasani collected and owed to Ecoprivate under their agreements. *See* De Luca Decl. at ¶¶ 18, 37 and Exs. E, Y; *see also* Klein Decl. at ¶ 11. Specifically, Bruce Bromley, the Chief Financial Officer for Soneva Group, acknowledged in an open letter that Mr. Shivdasani owed Ecoprivate at least US $345,000 in unpaid rental income as of December 31, 2013. *See* De Luca Decl. at ¶¶ 18, 37 and Exs. E, Y. Mr. Shivdasani paid Ecoprivate approximately US $111,000 on June 18, 2014, leaving a balance of approximately US $234,000 outstanding as at that date. *See* De Luca Decl. at ¶¶ 18, 37 and Exs. E, Y. Since June 2014, Mr. Shivdasani has not transferred any additional rental income to Mr. Ferrer or Ecoprivate, while continuing to collect rent for presumably his own ultimate benefit. *See* De Luca Decl. at ¶ 19 and Exs. F, G; *see also* Klein Decl. at ¶ 11. Based on financial statements in that 2014 letter, between January 2011 and June 2014, the Villa generated approximately US $186,000 per year in income owed to Ecoprivate. *See* De Luca Decl. at ¶¶ 18, 37 and Exs. E, Y. Assuming the Villa continued to generate at least this much income due to Ecoprivate, Mr. Shivdasani now owes Ecoprivate approximately US $186,000 times six years and eight months of rental income, which amounts to approximately US $1.24 million in rental income, to say nothing of additional amounts due for penalties, interest, and inflation. *See* De Luca Decl. at ¶¶ 18, 37 and Exs. E, Y.

Mr. Shivdasani has claimed that his Soneva resorts' performance following the COVID-19 pandemic has been "stellar" and "in some ways…we've become a beneficiary of Covid," so

there is no reason to assume that the rent owed to Ecoprivate over the last year would be lower than usual. *See* De Luca Decl. at ¶ 25 and Ex. M. Adding the estimated US $1.24 million in rental income owed to Ecoprivate to the amount outstanding in June 2014, Mr. Shivdasani owes Ecoprivate at least US $1.47 million in rental income, plus penalties, interest, and inflation, in addition to the US $6.175 million that Mr. Ferrer and Ecoprivate already invested. *See* De Luca Decl. at ¶¶ 18, 37 and Exs. E, Y. In January 2014, after Mr. Shivdasani repeatedly failed to transfer the rental income due to Ecoprivate, Mr. Ferrer requested that Mr. Shivdasani take the Villa off the market and cease renting it. *See* Klein Decl. at ¶ 11. Despite Mr. Ferrer's demand that Mr. Shivdasani cease from renting out his Villa, Mr. Shivdasani continues to list that very same Villa for rent online at US $10,930 per night. *See* De Luca Decl. at ¶¶ 41, 42 and Exs. CC, DD. In a letter dated July 15, 2020 sent to Mr. Ferrer and Ecoprivate, Mr. Shivdasani admitted that he and his companies had not complied with their obligations under the agreements, but attempted to excuse his failure to comply by citing financial difficulties and circumstances that Mr. Shivdasani and his companies are currently experiencing. *See* De Luca Decl. at ¶ 39 and Ex. AA. Mr. Shivdasani's excuse of purported financial difficulties is not a legally valid excuse for breach of contract. *See* De Luca Decl. at ¶¶ 6, 39, 43 and Exs. A, AA, EE.

## IV. INVESTMENT BY KSL CAPITAL PARTNERS

KSL Capital Partners is a Denver-based private equity fund that focuses on investment in travel and leisure businesses. *See* De Luca Decl. at ¶ 17 and Ex. D. In November 2019, along with Singaporean sovereign wealth fund GIC Pte. Ltd. (collectively, the "Funds"), KSL Capital Partners invested over US $200 million in Soneva to finance the luxury hotel brand's planned expansion over the next three years. *See* De Luca Decl. at ¶¶ 23, 24 and Exs. K, L; *see also* Klein Decl. at ¶ 13. In addition, these Funds also invested another US $30 million in Soneva Holdings

to finance the company's refurbishment of existing assets and the improvement of its facilities and services. *See* De Luca Decl. at ¶¶ 23, 24 and Exs. K, L. A representative from KSL Capital Partners stated that the private equity firm "is looking at opportunities to help Soneva grow as it learns more about the hospitality company." *See* De Luca Decl. at ¶ 23 and Ex. K. She also noted that, "[t]he more [KSL Capital Partners] ha[s] gotten to know Soneva, the more excited we are about the opportunities to help Soneva grow." *See* De Luca Decl. at ¶¶ 21, 22, 24 and Exs. I, J, L. This recent cash infusion by KSL Capital Partners raises doubt about Mr. Shivdasani's representations about Soneva's financial difficulties and inability to compensate Ecoprivate and other victims of the SKR Scheme.

## V. THE FOREIGN PROCEEDINGS

Applicants are contemplating and intend to lodge a criminal complaint in Switzerland against Mr. Shivdasani for fraud and criminal mismanagement with respect to the SKR Scheme. *See* Klein Decl. at ¶ 19. The negotiations as well as the execution of contracts related to Mr. Ferrer's investment in the Villa and the Land occurred in Switzerland. *See* Klein Decl. at ¶ 14. In addition Mr. Ferrer made the relevant payments to Mr. Shivdasani using a Swiss bank account. *See* Klein Decl. at ¶ 14. Mr. Ferrer is also a Swiss citizen and Swiss resident (as are a number of the other investors who Mr. Shivdasani also defrauded). *See* Klein Decl. at ¶¶ 6, 12. Thus, Swiss law enforcement authorities have jurisdiction over the Contemplated Criminal Proceeding. *See* Klein Decl. at ¶ 24. Under Swiss law, as the direct victims of a fraud, the Applicants are aggrieved persons and have legal standing to bring these claims. *See* Klein Decl. at ¶ 20. Finally, the Applicants have retained Swiss criminal counsel, who have reviewed the facts of the case and concluded that the probable cause standard has been met with respect to the charges of fraud and criminal mismanagement, which Applicants contemplate lodging against Mr. Shivdasani. *See*

Klein Decl. at ¶¶ 19, 25, 33. Therefore, considering that the probable cause standard has been met, Swiss criminal authorities are required by Swiss law to investigate the criminal claims that the Applicants are contemplating bringing. *See* Klein Decl. at ¶ 25.

On September 21, 2020, Ecoprivate filed, as provided for in the relevant agreement, a notice of arbitration against Bluebay (the "Notice of Arbitration") pursuant to Article 3 of the 2010 Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL"). *See* De Luca Decl. at ¶ 6 and Ex. A. Bluebay has refused to engage in the Arbitration Proceeding and failed to cooperate over the appointment of an arbitrator, thereby causing delay in the progress of the Arbitration Proceeding, which is evidence of a desire by Bluebay to frustrate a timely disposal of those proceedings. *See* De Luca Decl. at ¶¶ 6, 7 and Ex. A.

As alleged in the Notice of Arbitration, Mr. Shivdasani committed fraudulent misrepresentation and breach of contract. *See* De Luca Decl. at ¶ 6 and Ex. A. Specifically, Mr. Shivdasani misrepresented his and his companies' financial condition, in order to induce Mr. Ferrer to invest US $6.175 million in the Villa. *See* De Luca Decl. at ¶ 6 and Ex. A. Further, Mr. Shivdasani committed breach of contract by failing to convey good and marketable title to the Villa to Ecoprivate, and by paying less than ten percent of the rental income owed to Ecoprivate. *See* De Luca Decl. at ¶¶ 6, 18, 19, 29 and Ex. A, E, F, G, Q; *see also* Klein Decl. at ¶¶ 10, 11.

## VI. THE REQUESTED DISCOVERY

In furtherance of the Contemplated Criminal Proceeding and the Arbitration Proceeding, the Applicants seek to obtain discovery from KSL Capital Partners. *See* De Luca Decl. at ¶¶ 4, 5; *see also* Klein Decl. at ¶¶ 15, 17. Specifically, the Applicants seek documents and communications which are relevant to the investment made by KSL Capital Partners in companies related to Mr. Shivdasani and associated individuals. *See* De Luca Decl. at ¶ 9; *see also* Klein Decl. at ¶ 15.

## ARGUMENT

### I. THE SECTION 1782 APPLICATION MEETS EACH OF THE STATUTORY REQUIREMENTS FOR DISCOVERY

Title 28, United States Code, Section 1782 ("Section 1782") allows federal district courts to authorize litigants to obtain evidence for use in foreign proceedings. In pertinent part, 28 U.S.C. § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Thus, a district court is authorized to grant an application pursuant to 28 U.S.C. § 1782 if an applicant satisfies the following statutory requirements: (1) the party from whom the discovery is sought resides or is found in the district where the application is made; (2) the discovery is intended "for use" in a foreign proceeding; and (3) the application is made by an "interested person" in the foreign proceeding. *Id.* This application meets all the statutory requirements.

#### A. The Discovery Subject Resides or is Found in the District of Colorado

KSL Capital Partners resides and is found in the District of Colorado and thus is plainly subject to jurisdiction under Section 1782(a). *See In re Perez Pallares*, 10–cv–02528–PAB, 2010 WL 4193072, at *1 (D. Colo. 2010) (concluding that this threshold requirement was met when "respondents reside or can be found in this district."); *see also* De Luca Decl. at ¶ 12; *see also* Klein Decl. at ¶ 35. KSL Capital Partners regularly conducts business in this District, maintains its headquarters in Denver, Colorado, and is incorporated in Colorado. *See* De Luca Decl. at ¶¶ 14, 16-17 and Exs. C, D. Accordingly, the first statutory requirement is met with respect to the Discovery Subject.

**B. The Requested Discovery is "For Use" in the Foreign Proceedings**

The documents requested are "for use" in the Foreign Proceedings. The Court may grant discovery sought "for use in a proceeding in a foreign or international tribunal." *See* 28 U.S.C. § 1782 (a); *Westjest Airlines v. Lipsman*, 2015 WL 7253042, at *2 (D. Colo. 2015) (authorizing discovery for use in a contemplated Canadian proceeding). The "for use in a proceeding in a foreign or international tribunal" factor turns on (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc. (Euromepa II)*, 154 F.3d 24, 27 (2d Cir. 1998); *See also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (finding the "for use" statutory requirement met where the applicants were "parties to that [foreign] proceeding," and "retain[ed] the procedural right to submit the requested documents to the magistrate overseeing the investigation."). A proceeding in such a tribunal need not be pending or even imminent, so long as it is "within reasonable contemplation." *Intel,* 542 U.S. at 243. Courts in this district have affirmed that the "for use" requirement is met where the applicant is, or will be, a party to a foreign proceeding with the procedural right to submit evidence, without regard as to whether the evidence will ultimately be admissible in the foreign tribunal. *See Republic of Ecuador v. Bjorkman*, 801 F. Supp. 2d 1121, 1123 (D. Colo. 2011) ("Discovery rules in foreign tribunals bear no impact on the provision of assistance under Section 1782, and of course 'the foreign tribunal can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate'") (quoting *Intel*, 542 U.S. at 260–62)).

Regarding the Contemplated Criminal Proceeding, the "for use" requirement is met as this proceeding is within reasonable contemplation. *See Westjest Airlines*, 2015 WL 7253042, at *2 ("for use" requirement met even though proceedings had not yet begun) (citing *Intel*, 542 U.S.

243). The Applicants are victims of a fraudulent scheme by which Mr. Shivdasani induced them to invest US $6.175 million in the Villa and the Land, while failing to provide title. *See* De Luca Decl. ¶ 19 and Exs. F, G; *see also* Klein Decl. at ¶¶ 9, 10. As such, under Swiss law, Applicants have standing to bring a criminal claims against Mr. Shivdasani in Switzerland for fraud and for criminal mismanagement, and Applicants contemplate and in fact intend to bring these charges in the near future. Klein Decl. at ¶¶ 14, 19, 20. Applicants have retained Swiss criminal counsel, who have concluded that they meet the burden for probable cause, under Swiss law; this will require the Swiss criminal authorities to investigate the Applicants' claims after they are introduced. Klein Decl. at ¶¶ 25, 33.

The claims Applicants are contemplating lodging a criminal complaint which would need to be brought before the Office of the Attorney General of Vaud-East ("*Ministère public d'arrondissement de l'Est vaudois*") for fraud (Article 146 of the Swiss Penal Code, "SPC") and for criminal mismanagement (Article 158 para. 2 SPC). Klein Decl. at ¶¶ 19, 21, 22. As direct victims of fraud, the Applicants are parties to the Contemplated Criminal Proceeding as aggrieved persons who may participate as criminal plaintiffs in the forthcoming investigation and potential trial, which would be conducted by a public prosecutor and take place before the criminal court. Klein Decl. at ¶ 20. Furthermore, in the Contemplated Criminal Proceeding, the Applicants may request an award for damages from the court, in order to be compensated for the wrongdoing. Klein Decl. at ¶ 26.

The Applicants seek discovery from KSL Capital Partners in order to form a clear picture of the financial situation of Mr. Shivdasani and of his misrepresentations. *See* Klein Decl. at ¶ 34. Specifically, the Applicants are interested in learning whether Mr. Shivdasani and associated individuals and entities were sufficiently liquid to deliver good title to the Land and the Villa, and

pay the full amount of rental income contracted for, but failed to do so and did not make plans to fulfill these promises, which would be useful to establish fraud and criminal mismanagement. *See* Klein Decl. at ¶ 18. Additionally, financial records indicating a lack of integrity, and showing the true relationship between a network of offshore companies, their evolution and ownership over time, and their relationship to Mr. Shivdasani and his family, would also be useful to establish fraud, corporate alter egos or agency, and criminal mismanagement. *See* Klein Decl. at ¶ 18. Such evidence further goes directly to Mr. Shivdasani's state of mind and intent, as well as others no doubt involved with him and/or on notice of or aware of his nefarious way of operating, at the time the fraud was perpetuated (which is still ongoing), and his subsequent efforts to keep victims quiet with additional misrepresentations that continue to the present day. *See* Klein Decl. at ¶¶ 8, 11, 17, 18, 34

Beyond that, Applicants seek documents and communications which could shed light on an absence of unforeseen events that might have created a financial burden on Mr. Shivdasani and associated individuals and entities, and these records could similarly be useful to establish fraud and criminal mismanagement. *See* Klein Decl. at ¶ 18. Furthermore, Applicants seek documents and communications which could reveal whether Mr. Shivdasani's process for delivering title was followed or not, and what may have made it difficult to deliver on these promises, which could also help establish that he committed fraud and criminal mismanagement. *See* Klein Decl. at ¶ 18. Finally, documents and communications showing money flows, the use and destination of the proceeds of the sale of the Villa, the Land, and the rent received from third parties renting the Villa and other similar properties, would also be useful to establish fraud and criminal mismanagement. *See* Klein Decl. at ¶ 18. The evidence described above, is likely to be contained in the due diligence

materials carried out by KSL Capital Partners on Mr. Shivdasani and/or in the representations he made to KSL Capital Partners.

The discovery sought would also be used in the Arbitration Proceeding. As described in the Notice of Arbitration, Mr. Shivdasani committed breach of contract and fraudulent misrepresentation. *See* De Luca Decl. at ¶ 6 and Ex. A. Specifically, Mr. Shivdasani misrepresented his financial condition, in order to induce Mr. Ferrer to invest US $6.175 million in the Villa. *See* De Luca Decl. at ¶ 6 and Ex. A. Further, Mr. Shivdasani committed breach of contract by failing to convey good and marketable title to Ecoprivate and paying less than ten percent of the rental income owed to Ecoprivate. *See* De Luca Decl. at ¶¶ 18, 19 and Exs. E, F, G; *see also* Klein Decl. at ¶ 11. The discovery sought, which consists of documents and communications, which are relevant to the investment made by KSL Capital Partners in companies related to Mr. Shivdasani and associated individuals, could be used in the Arbitration Proceeding to establish Ecoprivate's claims. *See* De Luca Decl. at ¶¶ 8, 9, 15 and Ex. B. Specifically, this discovery could show that Mr. Shivdasani painted a different picture when he was communicating with KSL Capital Partners than when he communicated with the Applicants. *See* De Luca Decl. at ¶¶ 15, 39, 43 and Exs. B, AA, EE. Additionally, the financial records sought from KSL Capital Partners could show operational details of Mr. Shivdasani's Soneva Kiri Resort and related entities, establishing that he failed to deliver on promises made to Applicants. *See* De Luca Decl. at ¶¶ 15, 26, 29, 31, 37 and Exs. B, N, Q, S, Y.

In addition to conventional courts, the term "tribunal" includes investigative, administrative, arbitral, and quasi-judicial bodies - *i.e.,* any "first-instance decision maker." *Intel,* 542 U.S. at 258. Courts in this district have routinely granted 1782 applications in support of foreign arbitrations. *See In re Application of Michael Wilson & Partners, Ltd.*, 2007

WL 2221438 (D. Colo. 2007) (granting 1782 application to obtain documents and testimony for use in various proceedings, including private arbitration proceedings); *see also In re Broadsheet LLC*, 2011 WL 4949864, (D. Colo. 2011) (granting 1782 application for use in an arbitration claim under the Rules of Chartered Institute of Arbitrators); *see also Bjorkman*, 801 F. Supp. at 1124 (finding party to UNCITRAL arbitration, who made the Section 1782 application, was "clearly an interested person").[3]

The Arbitration Proceeding at issue remains ongoing, having commenced on September 21, 2020, when a Notice of Arbitration was served upon Bluebay and Mr. Shivdasani. *See* De Luca Decl. at ¶ 6 and Ex. A. The seat of the arbitration will be in a foreign jurisdiction, namely Singapore as provided in the dispute resolution clauses of the relevant agreement. *See* De Luca Decl. at ¶ 29 and Ex. Q. Indeed, the Permanent Court of Arbitration has designated the Singapore International Arbitration Center as the appointing authority in the Arbitration Proceeding, pursuant to the UNCITRAL Rules. *See* De Luca Decl. at ¶ 46 and Ex. HH. Furthermore, the Arbitration Proceeding is plainly adjudicative in nature and subject to sufficient judicial reviewability, as the Arbitration Proceeding is governed by the 2010 arbitration rules of UNCITRAL. *See In re Roz Trading Ltd.*, 469 F. Supp.2d 1221, 1226-28 (N.D. Ga. 2006) ("[w]here a body makes adjudicative decisions responsive to a complaint and reviewable in court, it falls within the widely accepted definition of 'tribunal,' the reasoning of *Intel*, and the scope of [Section] 1782(a), regardless of whether the body is governmental or private." *See also In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238-40 (D. Mass. 2008) (determining a private arbitration tribunal is within the scope of

[3] More recently, a court in this district found that a Miami-based International Commercial of Commerce ("ICC") arbitration was not considered a foreign or international tribunal. *See In re Grupo Unidos Por El Canal, S.A.*, 2015 WL 1810135 (D. Colo. 2015). The arbitration in that case was clearly domestic and it would not have been necessary to reach the issue of whether certain types of arbitrations qualify and others do not. The 10th Circuit has yet to decide the issue of what types of arbitrations qualify as foreign or international tribunals.

Section 1782); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 956-57 (D. Minn. 2007) (rejecting an "inflexible rule that would categorically exclude all private arbitrations from the definition of 'tribunal," and instead concluding that a private arbitral body qualified as a "tribunal" for the purpose of the statute).

Furthermore, Applicants rely on two separate proceedings which constitute the Foreign Proceedings, and this court may grant discovery for use in either or both proceedings. *See In re Pinckuk*, 2014 WL 348110 at *2 (D. Wyo. 2014) (noting a circuit split over whether private arbitrations fall within the meaning of "foreign or international tribunal" but granting discovery nonetheless as there were multiple foreign proceedings that could be relied on). Therefore, the second statutory requirement is met.

**C. The Applicants are Interested Persons**

As to the third requirement, the Applicants qualify as "interested persons" because (1) Ecoprivate and Mr. Ferrer are situated as victims in the Contemplated Criminal Proceeding; and (2) Ecoprivate, a company owned and controlled by Mr. Ferrer, is a party in the Arbitration Proceeding. *See* De Luca Decl. at ¶¶ 6, 13 and Ex. A; *see also* Klein Decl. at ¶ 36; *In re Fagan*, 2019 WL 5819972 at *1 (D. Colo. 2019) (holding that victim in criminal investigation qualified as an interested person); *see also Bjorkman*, 801 F. Supp. at 1124 (D. Colo. 2011) (Finding party to UNCITRAL arbitration, who made the Section 1782 application, was "clearly an interested person"). Under Swiss law, Applicants are direct victims of fraud, they are aggrieved persons, and they have legal standing to lodge a criminal complaint against Mr. Shivdasani. *See* Klein Decl. at ¶ 20. Further, Applicants have the right to participate as criminal plaintiffs in the forthcoming investigation and potential trial, which would be conducted by a Swiss public prosecutor. *See*

Klein Decl. at ¶ 20. Accordingly, the Applicants are clearly "interested persons" and the third statutory requirement is met.

## II. THE COURT SHOULD GRANT THE 1782 APPLICATION UNDER THE DISCRETIONARY FACTORS IN INTEL

Where, as here, an application satisfies the statutory requirements, the district court also considers a number of discretionary factors in determining whether to grant or deny the application. In doing so, the Court should keep in mind the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Michael Wilson & Partners*, 2007 WL 2221438, at *3 (quoting Malev, 964 F.2d at 100).

To further the purpose of the statute, the Supreme Court has delineated the following factors for district courts to consider when deciding whether to grant a discovery request pursuant to Section 1782: (a) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (b) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (c) whether the Section 1782 application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (d) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. *See Intel*, 542 U.S. at 264–66. Here, these factors support granting the Section 1782 Application.

### A. The Discovery Subject is not a Participant in the Foreign Proceedings

The first discretionary factor leans strongly in favor of granting the requested discovery because the Discovery Subject is not party to the Foreign Proceedings. The Supreme Court has recognized that "nonparticipants in the foreign proceeding may be outside of the foreign tribunal's

reach; hence their evidence, available in the United States, may be unobtainable absent 28 U.S.C. § 1782 (a) aid." *Intel*, 542 U.S. at 264

KSL Capital Partners is a resident of Colorado and as such may claim to be outside the reach of Swiss jurisdiction. *See* De Luca Decl. at ¶¶ 12, 16 and Ex. C; *see* Klein Decl. at ¶¶ 37, 38. KSL Capital Partners is not subject to jurisdiction in the Arbitration Proceeding. *See* De Luca Decl. at ¶ 12 and Ex. C. Additionally, the requested discovery is found in Colorado and not in Switzerland. *See* De Luca Decl. at ¶¶ 14, 15 and Ex. B; *see also* Klein Decl. at ¶ 4; *see also Intel*, 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [Section] 1782(a) aid.") As such, discovery pursuant to Section 1782 in this circumstance is precisely what courts have held the statute is for. *See e.g., In re Perez Pallares*, 2010 WL 4193072 at *1 (D. Colo. 2010) (holding that the first discretionary factor favored granting of the application where the respondent was a non-participant in foreign proceeding). *See also Bjorkman*, 801 F. Supp. 2d at 1124 (authorizing discovery against a non-party and noting that the subpoena recipient would not be subject to the jurisdiction of the foreign court, and citing *Intel*, 542 U.S. at 264).[4] Therefore, the first factor weights in favor of granting the request.

**B. The Foreign Tribunals in the Underlying Proceedings are Receptive to Receiving the Requested Discovery**

The arbitral tribunal and the Swiss court at issue would be receptive to the requested discovery. Under the second *Intel* factor, courts consider the nature of the foreign tribunal, the

[4] Even if the Discovery Subject were amenable to subject itself to discovery in Switzerland, Applicants need not first seek discovery in the foreign tribunals. As the Second Circuit has explained, there is no "'quasi-exhaustion requirement' …that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (internal quotations omitted); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement").

character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. *Intel*, 542 U.S. at 264.

In examining the second *Intel* factor, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Application of Michael Wilson*, 2007 WL 2221438 at *4 (D. Colo. 2007) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d at 1100 (2d Cir. 1992)). Authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id*.

In examining receptivity, a district court should consider neither the discoverability of the evidence in the foreign proceeding nor the admissibility of evidence in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 82; *see also Bjorkman*, 801 F.Supp.2d at 1124 (The foreign proceeding "may limit discovery within its domain for reasons peculiar to its own legal practices ... reasons that do not necessarily signal objection to aid from United States federal courts") (citing *Intel*, 542 U.S. at 261).

Federal district courts routinely grant Section 1782 applications seeking discovery for use in Swiss courts, including for criminal proceedings. *See e.g.*, *In re Accent Delight International Ltd*., 2018 WL 2849724 (S.D.N.Y. 2018); *In re Optimal Investment Services, S.A.*, 773 F.3d 456 (2d Cir. 2014); *In re Ex Parte Application of Jommi*, 2013 WL 6058201 (N.D. Cal. 2013); *In re Gianasso*, 2012 WL 651647 (N.D. Cal. 2012).

Moreover, in the Contemplated Criminal Proceeding, there is no indication that the relevant criminal court of the Canton of Vaud would not be receptive to the documentary and testimonial evidence sought. *See* Klein Decl. at ¶ 39. Nor do Swiss courts typically challenge the admissibility

of this type of evidence. *See* Klein Decl. at ¶ 39. In fact, this type of evidence is routinely used by Swiss courts. *See* Klein Decl. at ¶ 39.

Additionally, there has been no statement or order indicating that the discovery requested would not be welcomed in the Arbitration Proceeding. *See* De Luca Decl. at ¶ 10. Any disclosure obtained as a result of the instant application would be admissible in evidence in the Contemplated Criminal Proceeding and in the Arbitration Proceeding. *See* De Luca Decl. at ¶ 10; *see also* Klein Decl. at ¶ 39. In sum, the foreign tribunals are receptive to the assistance of U.S. courts and the second factor weighs in favor of granting the request.

**C. This Application does not Circumvent any Proof-Gathering Restrictions**

Applicants seek this discovery in good faith and are not attempting to circumvent the foreign tribunal's proof gathering restrictions. Typically, courts weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith. *See e.g., Interbrew Central Europen Holding BV v. Molson Coors Brewing Company*, 2013 WL 5567504 (D. Colo. 2013) ("Applicant's discovery requests do not attempt to circumvent foreign proof-gathering restrictions, as they are a good-faith effort to obtain probative evidence").

Indeed, additionally, courts have granted Section 1782 applications even when the discovery sought was unavailable in the foreign jurisdiction or when the applicant has not first tried to obtain the discovery overseas. *See, e.g.*, *In re Apostolos Mangouras to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. 1782*, No. 17-mc-172, 2017 WL 4990655, at *6-7 (S.D.N.Y. 2017). As mentioned previously, Swiss courts routinely welcome discovery obtained under Section 1782, and the criminal court of Vaud in the Contemplated Criminal Proceeding would likely welcome such discovery. *See* Klein Decl. at ¶ 39. Similarly, the

discovery requested would also be welcomed in the Arbitration Proceeding. *See* De Luca Decl. at ¶ 11.

Since the Section 1782 Application is brought in good faith and does not seek to circumvent the discovery procedures of the Arbitration Proceeding or the Contemplated Criminal Proceeding, the third factor also weighs in favor of granting the Application.

**D. The Requests are Narrowly Tailored and Targeted**

Section 1782 provides that discovery taken under the statute is governed by the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a). Thus, the Court "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *See Mees v. Buiter*, 793 F.3d 291, 302 (2d Circuit 2015); *See also In the Matter of Kozuch v. Kozuch*, 2018 WL 4376405 at *1 (D. Colo. 2018) (granting Section 1782 application where "request [was] not unduly intrusive or burdensome and the records [were] directly relevant" to the foreign proceedings). Further, the scope of permissible discovery under Fed. R. Civ. P. 26 provides, in part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents". *In re Application of Michael Wilson & Partners*, 2009 WL 1193874, at *2 (D. Colo. 2009) (citations omitted).

As described previously, the documents and communications Applicants request are relevant to potential criminal sanctions in the Contemplated Criminal Proceeding and to establishing claims described in the Arbitration Proceeding. *See* De Luca Decl. at ¶¶ 8, 9, 15 and Ex. B; *see also* Klein Decl. at ¶¶ 4, 17. Specifically, the discovery sought relates to the conduct at issue in the Foreign Proceedings, *i.e.* Mr. Shivdasani's representations regarding his financial condition which he made to KSL Capital Partners, the representations Mr. Shivdasani made to Mr.

Ferrer in connection with the sale of the Villa and the Land, his failure to provide good title to the Villa and the Land, his refusal to pay the full amount of rental income due, and his ongoing misrepresentations about financial difficulties. *See* De Luca Decl. at ¶¶ 8, 9; *see also* Klein Decl. at ¶¶ 17, 18.

In addition to being relevant, the requested discovery is not unduly intrusive or burdensome, in that it covers documents and communications related to a discrete number of companies and individuals associated with Mr. Shivdasani for a short period of time. *See* De Luca Decl. at ¶ 15 and Ex. B; *see also In re del Valle Ruiz*, 939 F.3d at 530 n.12 ("For instance, an applicant could target its discovery to all documents relating to x created during the course of respondent's engagement with forum entity y."). Additionally, to the extent that the Discovery Subject finds the discovery requests to be burdensome or intrusive, they may make a specific showing to that effect. *See In re Application of Inversiones y Gasolinera Petroleos Venezuela*, 2011 WL 181311, at *13 (S.D. Fla. 2011) (allowing discovery under § 1782 absent "specific showing" of burdensome or intrusive nature of request by respondent); *Cf. In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (noting that a subpoenaed party can "raise objections and exercise their due process rights by motions to quash the subpoena"). Therefore, the final factor also weighs in favor of granting the Application.

## III. THE COURT SHOULD GRANT THE APPLICATION *EX PARTE*

District courts may and customarily do resolve applications for discovery pursuant to Section 1782 through *ex parte* proceedings. *See, e.g., Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2002); *Esses v. Hanania*, 101 F.3d 873, 874 (2d Cir. 1996); *In re Ishihara Chem. Co.*, 121 F. Supp. 2d 209, 210 n.1 (E.D.N.Y. 2000), *vacated as moot*, 251 F.3d 120 (2d Cir. 2001); *In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y.

1991); *See also In re Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais,* 2013 WL 6164435, at *2 n.1 (E.D. Pa. 2013); *In re Mesa Power Group, LLC*, WL 6060941, at *9-10 (D.N.J. 2012) ("Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte* where the application is for the issuance of subpoenas and the substantial rights of the subpoenaed person are not implicated by the application."). "*Ex parte* applications for judicial assistance under Section 1782 are permissible because persons subject to Section 1782 subpoenas may file a motion to quash or modify the subpoena under the Fed. R. Civ. P 45(c)(3) or may seek a protective order under Fed. R. Civ. P. 26(c)." *Westjest Airlines*, 2015 WL 7253042, at *2 (citing *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1331 (D. Colo. 2015), and *Pallares*, 2010 WL 4193072, at *2).

In this case, Mr. Shivdasani has taken several steps to prejudice the interests of the Applicants, including misrepresenting the financial condition of Soneva, fraudulently inducing Mr. Ferrer and Ecoprivate to enter into agreements to purchase the Villa and the Land, breaching the contract with Ecoprivate by failing to deliver good and marketable title, failing to pay rental income owed to Ecoprivate, continuing to make misrepresentations about Mr. Shivdasani's financial situation, and refusing to cooperate with the Arbitral Proceeding. *See* De Luca Decl. at ¶¶ 6, 7, 26, 27, 29-31, 35, 43, 46 and Exs. A, N, O, Q-S, W, EE, HH; *see also* Klein Decl. at ¶¶ 17, 18. It is likely that if Mr. Shivdasani received notice of the Applicants' efforts to seek discovery against KSL Capital Partners, he would take further steps to prejudice the interests of the Applicants. *See* De Luca Decl. at ¶¶ 9, 18, 26, 27, 39 and Exs. E, N, O, AA.

As such, the Applicants make this Section 1782 Application without notice because they believe that KSL Capital Partners or their associates may inform Mr. Shivdasani or his associates

of these proceedings, who would subsequently continue their behavior, which is detrimental to the interests of the Applicants.

In addition, in the Contemplated Criminal Proceeding, there are likely to be criminal sanctions for Mr. Shivdasani and Bluebay, if they are found guilty of fraud and criminal mismanagement. *See* Klein Decl. at ¶ 32. If the 1782 Application were provided on notice to KSL Capital Partners and if they provided notice to Mr. Shivdasani or his associates of the Contemplated Criminal Proceeding, Mr. Shivdasani and Bluebay would likely take steps to evade the criminal investigation and forthcoming criminal sanctions.

For these reasons, this Court should grant the Section 1782 Application *ex parte*.

## CONCLUSION

WHEREFORE, Applicants Ecoprivate Business Ltd & Mr. Jean Sebastian Ferrer Funke pray for an order of this Court:

(1) Granting discovery pursuant to 28 U.S.C. § 1782;

(2) Authorizing the issuance of the subpoena attached to the Declaration of E. Martin De Luca (Ex. B);

(3) Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 18, 2021

Respectfully submitted,

**KOBRE & KIM LLP**

*/s/ Martin De Luca*

E. Martin De Luca
martin.deluca@kobrekim.com
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
Telephone: +1 (212) 488 1200
Facsimile: +1 (212) 488 1220

*Attorneys for Applicants Mr. Ferrer and Ecoprivate*