UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>*EX PARTE* APPLICATION UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM KSL CAPITAL PARTNERS | Case No. _____ |

**DECLARATION OF YVES KLEIN IN SUPPORT OF *EX PARTE* APPLICATION UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM KSL CAPITAL PARTNERS**

Yves Klein declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I was admitted to the Geneva Bar in 1997, and, as such, am licensed to practice law in Switzerland. I am a partner of the law firm Monfrini Bitton Klein, with offices in Geneva, Switzerland. Monfrini Bitton Klein is counsel to Ecoprivate Business Ltd. and Mr. Jean Sebastian Ferrer Funke ("Ecoprivate," "Mr. Ferrer" or "Applicants").

2. I have over 25 years of experience working with criminal law in Switzerland and I have handled approximately 200 criminal cases in Switzerland. I have worked on at least 20 Section 1782 applications with a Swiss element over the last 15 years.

3. I make this declaration in support of an Application for an Order Granting Leave to Obtain Discovery from KSL Capital Partners, LLC ("KSL Capital Partners") pursuant to Section 1782 (the "Section 1782 Application"). All statements in this Declaration are based upon my personal knowledge and experience, or upon my review of records maintained by Monfrini Bitton Klein in the regular course of its representation of the Applicants, including but not limited to documents, written and/or oral information and bank records provided by clients, and public

1

records.  Insofar as they are within my own knowledge, experience and belief, the facts and matters set forth herein are, to the best of my own knowledge, experience and belief, true.

4. The Applicants seek assistance from the United States District Court for the District of Colorado to obtain documentary and testimonial evidence from a company residing or found in this District.  The Applicants plan to deploy the requested documentary and testimonial evidence to support contemplated Swiss criminal proceedings, in which the Applicants are the victims of fraud, against the Discovery Subject (defined below) for fraud and criminal mismanagement (the "Contemplated Criminal Proceedings").  Specifically, the Applicants seek documents and information from KSL Capital Partners (the "Discovery Subject") regarding payment transactions and due diligence records involving the following four individuals and/or entities, which are related to the Contemplated Criminal Proceeding:

    a. Bluebay Resorts (BVI) Limited (British Virgin Island);

    b. Soneva Kiri Resort Co. Ltd (Thailand);

    c. Mr. Shivdasani;

    d. Mrs. Eva Malmström Shivdasani; and

    e. Other entities and individuals included in the subpoena to be issued to KSL Capital Partners.

## Relevant Parties

5. Ecoprivate is a company incorporated and operated as a BVI Business Company under the laws of the British Virgin Islands.  It is owned and controlled by Mr. Ferrer.

6. Mr. Ferrer is a Swiss citizen, domiciled in Switzerland.

7. KSL Capital Partners is an investment adviser registered with the United States Securities and Exchange Commission.  Their website lists their headquarters at 100 St. Paul Street,

Suite 800, Denver, CO 80206.

## Basis for the Proceedings

8.      The Contemplated Criminal Proceedings arises out of a fraudulent luxury real estate development scheme in Thailand known as the Soneva Kiri Resort, organized and fraudulently sold by Mr. Sonashah Shivdasani ("Mr. Shivdasani"), who at all material times was acting for and on behalf of Bluebay Resorts (BVI) Limited (the "SKR Scheme").

9.      The Applicants are victims of the SKR Scheme who were induced by Mr. Shivdasani to enter into an agreement to buy a villa for the total price of US $6.175 million and an agreement to buy a lease of land on which the villa was to be built that formed part of the developments.

10.     Mr. Ferrer, through Ecoprivate, parted with US $6.175 million, which he would not have done if he had not been dishonestly misled by Mr. Shivdasani.  Furthermore, in clear breach of contract, Mr. Shivdasani and Bluebay Resorts (BVI) Limited have failed to comply with the obligations under the agreement to convey good title to any villa or lease of land.

11.     Mr. Ferrer, through Ecoprivate, should have received rental income for the use of the villa he bought, but apart from payments he received in June 2014, he has received no rent at all for years for the use of the villa, despite it being rented out to third parties, and still being rented out today.  Because of Mr. Shivdasani's repeated failure to pay Ecoprivate the rental amount due under the agreements, in January 2014 Mr. Ferrer requested that Mr. Shivdasani take his Villa off the market and cease renting it.

12.     Other purchasers are in a similar position to the Applicants because Mr. Shivdasani failed to deliver good title to any villa or lease of land to those purchasers and failed to pay the rent due under the agreements, with these victims having collectively lost more than US $26

million. A number of these other victims are also Swiss citizens and Swiss residents.

13. It has been reported that KSL Capital Partners has recently invested approximately US $230 million into the Soneva Group of Resorts.

14. This Application represents, in part, the Applicants' effort to obtain accurate financial information pertaining to the investments in entities owned or controlled by Mr. Shivdasani. Such financial information will be deployed in the Contemplated Criminal Proceeding involving some or all of the entities owned or controlled by Mr. Shivdasani in Switzerland for fraud and criminal mismanagement. The negotiation as well as the execution of the contracts occurred in Switzerland and the payments for the acts of fraud and criminal mismanagement were executed through Swiss bank accounts.

**The Contemplated Criminal Proceeding and the Relevance of the Requested Discovery**

15. The Applicants seek assistance from the United States District Court for the District of Colorado to obtain relevant and probative documentary and testimonial evidence from KSL Capital Partners for use in the Contemplated Criminal Proceeding.

16. Specifically, the Applicants seek documents and information from KSL Capital Partners regarding its investment in entities owned or controlled by Mr. Shivdasani.

17. The information and documents sought through this Application are for use in the Contemplated Criminal Proceedings and such evidence is necessary to prove that the Discovery Subject organized a fraud, and continued to mislead the victims long after extracting funds from them. In short, the discovery sought may show that Mr. Shivdasani has been telling the victims of the Soneva Kiri Resort fraud one thing, while telling new investors, such as KSL Partners, something completely different.

18. Specifically, certain types of financial records, which the Discovery Subject is

4

likely to have in their possession, would be useful to establishing fraud and criminal mismanagement. In particular, financial records, documents and communications showing that Mr. Shivdasani and associated entities and individuals were sufficiently liquid to deliver good title to the Land and the Villa and pay the full amount of rent contracted for, but failed to do so and did not make plans to fulfill these promises while continuing to represent to this day that they have no financial ability to fulfill their promises, would be useful to establish fraud and criminal mismanagement. Additionally, financial records indicating a lack of financial integrity and showing the true relationship between a network of offshore companies, their evolution and ownership over time, and their relationship to Mr. Shivdasani would also be useful to establish fraud and criminal mismanagement. Likewise, documents and communications showing a lack of unforeseen events that might have created a financial burden on Mr. Shivdasani and associated entities and individuals would be useful to establish fraud and criminal mismanagement. Furthermore, documents and communications showing whether the process for delivering title was followed or not, and what may have made it difficult to deliver on these promises, would similarly be useful to establish fraud and criminal mismanagement. Finally, documents and communications showing the use and destination of the proceeds of the sale of the Villa, the Land, and the ongoing rent revenue received from third parties would also be useful to establish fraud and criminal mismanagement.

19.     The Applicants are contemplating lodging a criminal complaint before the Office of the Attorney General of Vaud-East ("*Ministère public d'arrondissement de l'Est vaudois*") (the "OAGV") for fraud (Article 146 of the Swiss Penal Code, "SPC") and criminal mismanagement (Article 158 para. 2 SPC) with respect to the SKR Scheme.

20.     Any individual or legal entity whose rights, as legally protected by the applicable

5

provision of the Swiss Penal Code, are directly harmed by the crime subject to the investigation is deemed to be an aggrieved person (Article 115 of the Swiss Code of Criminal Procedure; "SCCP"). Therefore, as the direct victims of a fraud, the Applicants are aggrieved persons and have legal standing to lodge a criminal complaint against Mr. Shivdasani and other natural persons to be identified for fraud and criminal mismanagement and to participate as criminal plaintiffs in the investigation conducted by the public prosecutor and, if any, to the trial that could take place before the criminal court.

21. Fraud within the meaning of Article 146 SPC is a felony (Article 10 para. 2 SCP). Any person who with a view to securing an unlawful gain for himself or another willfully induces an erroneous belief in another person by false pretenses or concealment of the truth, or willfully reinforces an erroneous belief, and thus causes that person to act to the prejudice of his or another's financial interests, is liable to a custodial sentence not exceeding five years or to a monetary penalty.

22. Criminal mismanagement within the meaning of Article 158 para. 2 SCP is a felony (Article 10 para. 2 SCP). Any person who, with a view to securing an unlawful gain for himself or another, abuses the authority granted to him by statute, an official order or a legal transaction to act on behalf of another and as a result causes that other person to sustain financial loss is liable to a custodial sentence not exceeding five years or to a monetary penalty.

23. Any person who commits a felony or misdemeanor in Switzerland is subject to the SPC (Article 3 para. 1 SPC). A felony or misdemeanor is considered to be committed at the place where the person concerned commits it or unlawfully omits to act, and at the place where the offence has taken effect (Article 8 para. 1 SPC). Fraud and criminal mismanagement are material felonies with two results: the first is the impoverishment of the victim, the second is enrichment,

6

of which only the intention - to the exclusion of realization - is a constituent element of the crime. Both the place where the impoverishment occurred and the place where the result sought by the perpetrator was to occur or occurred, respectively, constitute the place of the result within the meaning of Article 8 SPC.

24. In the case at hand, the negotiation as well as the execution of the contracts occurred in Switzerland and the payments for the acts of fraud and criminal mismanagement were executed through Swiss bank accounts. Therefore, Swiss law enforcement authorities have jurisdiction over the Contemplated Criminal Proceedings. Within Switzerland, the local competent jurisdiction would be the Canton of Vaud. More particularly, the competent Vaud law enforcement authority to investigate and prosecute the Contemplated Criminal Proceedings would be the Office of the Attorney General of Vaud-East.

25. Based on my review of the factual record and on my experience with Swiss criminal law, the probable cause standard has been met with regard to the fraud and criminal mismanagement claims under contemplation. Therefore, as required by Swiss law, when the Applicants move forward with the Contemplated Criminal Proceedings, the Swiss law enforcement authorities would be obligated to investigate these claims.

26. In addition to the right to participate in the criminal investigation, the person aggrieved by the crime, who made the civil plaintiff declaration (Article 119 para. 2, b. SCCP) during the criminal investigation, may make a request to the Swiss court that had conduct of the criminal trial for an award in damages. The award part of the criminal judgment has the same effect as a judgment issued by a civil court (Article 122 SCCP). The action for civil damages is an accessory to the criminal proceedings. This means that the defendants to the action for civil damages must also be the defendants to the criminal proceedings, and the facts at the basis of the

action for damages must be the same as those at the basis of the criminal proceedings (Article 124 SCCP).  The civil plaintiff must quantify and substantiate its claim by alleging facts and the evidence they rely on, with the aim of demonstrating that said damage was caused by the criminal offence in the meaning of article 41 of the Swiss Code of Obligations (SCO).  This must occur, at the latest, during the final pleadings before the criminal court (Article 123 para. 2 SCCP).  The claim for damages may be increased or amended until the final pleadings.  In particular, acts of fraud may entail civil liability towards the person aggrieved by the predicate offence.  As described above (see above, §19), Articles 148 and 158 SPC are provisions meant to protect the patrimonial interests of the person aggrieved by these offences.  Consequently, their intentional breach may entail liability for damages pursuant to article 41 SCO.

27.     The judge (namely the public prosecutor or the criminal court) shall order the forfeiture of assets that were acquired as the result of an offence or were intended to bring about or reward an offence, to the extent that they are not handed over to the aggrieved person in restoration of his rights (Article 70 para. 1 SPC).  The forfeiture is compulsory and is not at the discretion of the authorities.  Forfeiture decisions are usually accessory to a conviction.  Forfeiture shall not be ordered if a third party acquired the assets in the ignorance of the facts that would justify their forfeiture and to the extent that he provided adequate consideration (Article 70 para. 2 SCP).  The onus of proving that neither good faith nor adequate consideration was given lies on the State, but the third party has an obligation to cooperate.  The presumption of innocence does not apply and the State is in the same situation as a claimant in civil proceedings.  Forfeiture must be ordered even if nobody is punishable (*e.g.* the offender passed away) or capable of being punished (the offender could not be tried, in person or *in absentia*).  In these instances, SCCP provides for an autonomous forfeiture procedure, or "non-conviction-based forfeiture" (Article

376 SCCP).

28. If the assets to be forfeited are no longer available, a replacement claim of the State shall be ordered in the same amount as the value of the assets, against the offender and/or against a third party who does not meet the conditions of protection of Article 70 para. 2 SPC (Article 71 SPC).  The replacement claim of the State must also be ordered instead of forfeiture if, for example, the assets can no longer be identified through an uninterrupted paper trail, or if they have been mixed with legitimate assets.  In order to secure the enforcement of the claim for the compensation of the State, the authorities may attach assets that are unrelated to the crime.

29. Under Article 73 SPC, if a crime has caused damage not covered by insurance and if it must be presumed that the offender will not pay compensation for the crime, the aggrieved person is entitled to receive, upon his request, up to the amount of the damages established by a judgment or by agreement with the offender: (a) the fines paid by the offender; (b) the forfeited assets (or the proceeds of their sale); (c) the replacement claim of the State; (d) the amount of the preventive bond.  The aggrieved person's entitlement to the said allocation is a right which is not within the discretion of the state.

30. The right to prosecute is subject to a time limit of fifteen years if the offence carries a custodial sentence of more than three years, which is the case for fraud and criminal mismanagement according to Article 158 para. 2 SPC.  The fraud at issue here, which began in 2008, is within the time period permitted for prosecution.

31. Targets of the criminal proceedings will not be decided by the Applicants but by the OAGV on the basis of available evidence.  Potential defendants are any person who perpetrated the fraud and criminal mismanagement under investigation.

32. The Contemplated Criminal Proceedings will, accordingly, adjudicate whether the

defendants in the criminal proceedings are guilty of fraud and criminal mismanagement and are liable for damages to the Applicants, and a judgment of the criminal court of Vaud against such defendants may result in a conviction for fraud and criminal mismanagement, the award of damages to the Applicants, the forfeiture of proceeds of the fraud or of replacement value and their attribution to the Applicants in compensation of its damage.

33. With regard to the Contemplated Criminal Proceedings, Applicants have retained counsel in Switzerland, where such proceeding is within contemplation.

34. Furthermore, the evidence sought through this application is crucial to establishing the veracity of the litany of stories that Mr. Shivdasani has been telling the Applicants and other victims over the years as to why their funds could not be returned, and to uncovering the nature and whereabouts of the assets of the entities and individuals associated with Mr. Shivdasani in order to form a clear picture of their financial structures and to successfully have the question of their liability for fraud adjudicated.

35. KSL Capital Partners resides or is found in this District, and as such, is a proper discovery target pursuant to Section 1782.

36. The Applicants seek this evidence as interested parties in their capacity as putative claimants in the Contemplated Criminal Proceeding.

37. KSL Capital Partners does not appear to operate in Switzerland and will not likely be subject to the Swiss Court's jurisdiction.

38. KSL Capital Partners is not expected to be a party to the Contemplated Criminal Proceedings. Indeed, absent the instant Application, and requested Order and subpoena authority, the evidence sought here would almost certainly remain outside the reach of the relevant criminal court of Vaud.

39. Further, there is no indication the relevant criminal court of Vaud would not be receptive to the documentary and testimonial evidence sought through the instant Application. To my knowledge, the admissibility of such evidence has never been challenged before a Swiss court of appeal, and it is my personal experience that such evidence has been routinely used by courts in Swiss criminal proceedings, including in preliminary criminal investigations. Such evidence is therefore admissible in the Swiss criminal courts, and the Application does not circumvent any proof-gathering restriction under Swiss law.

40. The discovery sought from KSL Capital Partners is not intrusive or unduly burdensome. The Applicants seek documentary and testimonial evidence concerning financial records from the Discovery Subject. This evidence is of the type that KSL Capital Partners must have as a third party investor. Furthermore, Applicant limits its request to KSL Capital Partners' applicable document and/or information retention period.

Dated:   Geneva, Switzerland
         March 15, 2021

**MONFRINI BITTON KLEIN**

*S/ Yves Klein*

Yves Klein
yklein@mbk.law
Monfrini Bitton Klein
Place du Molard 3
CH – 1204 Geneva – Switzerland
Phone: +41 22 310 22 66

*Attorney for Applicants Ecoprivate Business Ltd and Mr. Jean Sebastian Ferrer Funke*